**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| REBECCA LYNNE COLBERT, | ) | **C/A No. 4:21-cv-2034-JD** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| HIGHLAND INDUSTRIES, INC., | ) | |
| JOYSON KSS AUTO SAFETY, S.A., | ) | |
| JOYSON SAFETY SYSTEMS f/k/a KEY | ) | |
| SAFETY SYSTEMS, HONDA MOTOR | ) | |
| CO., LTD., HONDA R&D CO., LTD., | ) | |
| AMERICAN HONDA MOTOR CO., INC., | ) | |
| AND HONDA DEVELOPMENT & | ) | |
| MANUFACTURING OF AMERICA, LLC | ) | |
| f/k/a HONDA OF AMERICA, MFG., INC. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S RULE 12(b)(3) MOTION TO DISMISS FOR IMPROPER VENUE OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404

On June 5, 2018, Plaintiff Rebecca Lynne Colbert, a resident of Texas, was involved in an automobile accident while driving her 1998 Honda Civic near Rockport Texas.  See Texas Accident Report, attached as Exhibit A.  Plaintiff alleges that the driver's side airbag inflator, which was designed and manufactured by Takata entities acquired by the Joyson Defendants, ruptured during this accident and caused her injuries. Plaintiff's Action alleges that Defendants, collectively and individually, are liable to her for various causes of action sounding in products liability.

Instead of filing this Action in her home forum of the United States District Court for the Southern District of Texas, she filed this Action in this Court.  There is no

1

connection between Plaintiff's alleged harm and any actions or omissions occurring in South Carolina.

Defendant America Honda Motor Co., Inc. ("AHM"), thereby moves this Court, pursuant to Rule 12(b)(3), of the Federal Rules of Civil Procedure, to dismiss Plaintiff's complaint on the grounds the District of South Carolina is an improper venue in accordance with 28 U.S.C. § 1391(b).[1]  Venue is improper in this district because none of the parties reside in South Carolina and no substantial part of the events giving rise to Plaintiff's claims—namely, Plaintiff's alleged injuries or the manufacture or design of the allegedly defective inflator in her vehicle —occurred in South Carolina.

In the alternative, AHM moves this Court to transfer of this case to the Southern District of Texas under 28 U.S.C. §1404(a) because transfer to that court will increase the convenience of the parties and witnesses and serve the interests of justice.  Plaintiff could have filed this Action in the Southern District of Texas, where she resides and where the key event giving rise to her alleged injuries occurred.  Pursuing this Action in the Southern District of Texas will be more convenient to the Plaintiff and to key non-party witnesses. Plaintiff will be further advantaged by transfer to the Southern District of Texas as the applicable choice of law provision requires the application of Texas substantive law and the median time to trial is shorter to trial in that court compared with this Court.  Finally, as all Defendants are residents of states other than South Carolina, transfer will not increase the inconvenience of Defendants.

---

[1]Pursuant to Local Civil Rule 7.04 (D.S.C), AHM is not submitting a separate memorandum as all the ground in support of its motion are set forth in the motion.

## FACTUAL BACKGROUND

### A.  Factual Allegations

This product liability lawsuit arises from a motor vehicle accident that occurred on June 5, 2018.  Complaint ¶ 1, 43.  Plaintiff was operating her 1998 Honda Civic when she collided into a boat that was being towed by a truck traveling the opposite direction on a road in Rockport, Texas.  *Id*.  Plaintiff alleges her driver's side Non-Azide Driver Airbag Inflator ("NADI") deployed with excessive internal pressure such that the canister ruptured, which propelled the airbag module and shrapnel toward her.  Compl. ¶ 46.  Plaintiff alleges negligence, gross negligence, reckless conduct, and breach of warranty arising out of Defendants' design, selection, inspection, testing, manufacture, assembly, equipping, marketing, distribution, and sale of the NADI installed in Plaintiff's 1998 Honda Civic.  Compl. ¶ 4, 46.

### B.  Parties

On July 8, 2021, Plaintiff filed her original complaint in the District of South Carolina.  Compl. ¶ 1.  Plaintiff is a resident of Texas.  Compl. ¶ 5.  Plaintiff asserts claims against defendants AHM, Highland Industries, Joyson KSS Auto Safety, Joyson Safety Systems, Honda Motor Co., LTD., Honda R&D Co., LTD., and Honda Development & Manufacturing of America, LLC (collectively, Defendants).[2]  AHM is incorporated, headquartered, and with a principal place of business in California.  Compl. ¶ 20. Defendant Joyson KSS Auto Safety is a foreign corporation organized under the laws of Luxembourg with its principal place of business in Michigan.  Compl. ¶ 15.  Defendant

---

[2] As of the date of this Motion, AHM is not aware of any service upon Defendants Honda Motor Co., Ltd., Honda R&D Co., Ltd., or Honda Development & Manufacturing of America, LLC.

Joyson Safety Systems is a foreign corporation organized in and with its principal place of business in Michigan.  Compl. ¶ 14.  Honda Motor Company is a foreign corporation organized and with a principal place of business in Japan. Compl. ¶ 18.  Highland Industries is a foreign corporation organized and existing under the laws of Delaware with a principal place of business in North Carolina.  Compl. ¶ 16.[3]  None of the forementioned Defendants are organized under the laws of or have their principal place of business in South Carolina.

### C. Plaintiff's Specific Defect Allegations

Plaintiff has alleged that the "airbag inflator module" in her Honda Civic was defective and the proximate cause of her injuries.  Compl. ¶ 5.  It is undisputed that at the time of the accident, Plaintiff's vehicle was equipped with a NADI (non-azide driver's inflator) airbag inflator, which was designed and manufactured by Takata.[4]  This inflator was housed in an airbag module installed in the steering column of the Honda Civic.[5]

Plaintiff supports her claim of defective inflator by citing to Honda's voluntary safety recall 20V-026 of January 2020, which was based on Takata's December 2019 equipment defect notification, 19E-080, which states:

---

[3] Plaintiff's complaint alleges Highland Industries, Inc's principal place of business is Cheraw, South Carolina.  Compl. ¶16.  However, Highland's principal place of business is their headquarters in Greensboro, North Carolina.  *See* Highland Industries website ("Highland website"), https://www.highlandindustries.com/about-us/locations/, attached as Exhibit B.

[4] [The Takata entities filed for Chapter 11 bankruptcy protection in June 2017.  Defendant Joyson KSS Auto Safety S.A. acquired certain assets of Takata entities in the bankruptcy process and acquired Defendant Highland Industries, Inc.  This included acquiring liability for the NADI inflators.  Compl. ¶ 6-13.

[5] "Generally, when there is a moderate to severe crash, a signal is sent from the air bag system's electronic control unit to an inflator within the air bag module. An igniter in the inflator starts a chemical reaction that produces a harmless gas, which inflates the air bag."  *See* https://www.nhtsa.gov/equipment/air-bags

> According to the equipment defect notification 19E-080 filed by Takata, certain Takata Non-Azide Driver Airbag **Inflators** have the potential to exhibit elevated moisture ingress due to insufficient aluminum tape seal.   This can lead to slow deployment, which may result in insufficient protection by the driver frontal airbag, or there may be over-aggressive combustion creating excessive internal pressure when the driver frontal airbag is deployed.   Very high internal pressure could result in the body of the airbag inflator rupturing upon deployment.

Compl. ¶ 77. (emphasis added).   Plaintiff alleges other reported instances of inflator failure in support of her argument the NADI inflator in her vehicle was defective.   Compl. ¶ 78.

However, Plaintiff has not and cannot present any evidence that the **airbag module**, which incorporates the airbag inflator, in her vehicle was defective, other than it contained an allegedly defective airbag inflator.   The inflator is manufactured separate from the airbag module.   *See* Declaration of Patrick J. Cleary ("Cleary Dec."), attached as Exhibit C, ¶¶ 17-19 (citing to the March 2015 Deposition of Takata employee John O'Brien).   After the inflator is manufactured, it is then incorporated into an airbag module, which is subsequently installed in a vehicle.   *Id.*   The inflator in question were manufactured either in a Takata facility located in Moses Lake, Washington or LaGrange, Georgia, not in Defendant Highland Industries, Inc.'s manufacturing plant in Cheraw, South Carolina.   *Id.* ¶ 11, 15-16. The inflator and the propellant were designed and developed in Michigan, not in South Carolina.  *Id.* ¶ 12.

<u>**Venue is Not Proper In the District of South Carolina**</u>

Plaintiff has failed to show that venue is proper in the District of South Carolina. To grant a motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure,

the court must find that the venue is improper. *Butler v. Ford Motor Co.*, 724 F. Supp. 2d

575, 586 (D.S.C. 2010). The general venue statute, 28 U.S.C. § 1391, provides:

> A civil action may be brought in --
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

A court may freely consider evidence outside of the pleadings for a Rule 12(b)(3)

motion or a motion for transfer under § 1404. *See Aggarao v. MOL Ship Mgmt. Co.*, 675

F.3d 355, 365–66 (4th Cir. 2012) ("On a motion to dismiss under Rule 12(b)(3), the court

is permitted to consider evidence outside the pleadings.").[6]

In the Fourth Circuit, when a challenge to venue is raised under Rule 12(b)(3), the

plaintiff bears the burden of demonstrating that venue is appropriate. *See Bartholomew*

*v. Va. Chiropractors Ass'n,* 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938,

100 S.Ct. 2158, 64 L.Ed.2d 791 (1980), *overruled on other grounds by Union Labor Life*

*Ins. Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002 (1982). Plaintiff will not be able to do so

in this Action. First, venue cannot arise under § 1391(b)(1) because not all the defendants

---

[6] *Young v. PMAC Lending Servs.*, No. 2:15-CV-3865-PMD, 2015 WL 7776932, at *2 (D.S.C. Dec. 2, 2015) (providing when considering a § 1404 motion, the district court may consider evidence outside the pleadings).

reside in South Carolina.[7]  Compl. ¶¶ 6-15, 17-22; Exh. B, Highland's Website. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides if all defendants are residents of the State in which the district is located.").

Second, venue cannot arise under § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims did not occur in the District of South Carolina.  *See* 28 U.S.C. § 1391(b)(2) ("[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").  Because "'it is possible for venue to be proper in more than one judicial district,' the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are 'sufficiently substantial.'"  *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  *Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011) (quoting *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 432 (2d Cir. 2005)).  The "acts or omissions must be more than tangentially connected to qualify as 'substantial' under § 1391(a)(2)."  *Siegel v. Homestore, Inc.*, 255 F. Supp. 2d 451, 455 (E.D. Pa. 2003).

---

[7] Even if the court uses Plaintiff's complaint alone to determine Highland Industries is a resident of South Carolina, because no other defendants reside in South Carolina venue is improper in the District of South Carolina pursuant to § 1391(b)(1) (providing venue is proper if any defendant resides in that district, "if all defendants are residents of the State in which the district is located").

Plaintiff cannot show that a substantial part of the events or omissions occurred in South Carolina. Plaintiff begins her complaint alleging her injuries were caused by a "defective inflator module," which she alleges was manufactured in South Carolina. Compl. ¶ 1-2.   However, no part of the allegedly defective inflator was designed, manufactured, or tested in South Carolina.  This inflator was manufactured at a Takata manufacturing plant located in LaGrange, Georgia or Moses Lake, Washington.  Cleary Dec. ¶ 11, 13.  The inflator and propellant therein were developed by a Takata entity in Michigan.  *Id.* ¶ 13.

This distinction is critical to the determination of the appropriate venue.  Because Plaintiff is alleging her cause of action stems from the alleged defective inflator, any connection to South Carolina is tangential at best.  Compl. ¶ 77-98.  The most Plaintiff can claim is that the allegedly defective inflator was incorporated into a completed module assembled in South Carolina.  Cleary Dec. ¶¶ 17-19.

"'In tort cases, when determining whether a substantial part of the events or omissions giving rise to the plaintiff's claim occurred or did not occur' in a particular district for purposes of § 1391(b)(2), 'the facts that courts focus on include the place where the allegedly tortious actions occurred and the place where the harms were felt.'"  *Est. of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 8 (D.D.C. 2009) (quoting 14D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 3806.1 (6th ed. 2008).  "Often in a products liability case, a plaintiff's claims *arise in his home district*."  *Lehr v. Stryker Corp.*, No. CIV.A. 09-02989, 2010 WL 3069633, at *4 (E.D. Pa. Aug. 4, 2010) (emphasis added).  Here, the alleged facts giving rise to the claim are the design, manufacture, and testing of the inflator—which occurred in either

Michigan, Georgia, or Washington; or the place where Plaintiff's harm was felt—Texas. Compl. ¶¶ 1, 5; Cleary Dec. ¶ 11, 15.

The relevant events that occurred outside of South Carolina which give rise to the claim are: (1) the design of the vehicle, (2) the design of the inflator, (3) the manufacture of the inflator, (4) the testing of the airbag system, (5) the purchase of the vehicle, (6) the accident location, (7) the location of Plaintiff's harm, (8) the Plaintiff's medical care, (9) the residency of all defendants, (10) the residency of the Plaintiff, and (11) the location of the vehicle. Here, there are no events which give rise to the claim that happened in South Carolina. *See Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1371 (11th Cir. 2003) ("Only the events that *directly* give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a *substantial* part of the events are to be considered." (emphases added)). Only an insubstantial event took place in South Carolina, the installation of the allegedly defective airbag inflator into the airbag module. Cleary Dec. ¶ 11, 15. South Carolina's connection to the events giving rise to the Action is at most tangential and do not give rise to venue being proper in this state.

Venue is improper in the District Court of South Carolina, and this Court should dismiss this Action as being filed in an improper venue under Rule 12(b)(3) and 28 U.S.C. § 1391.

### The Southern District of Texas is an Appropriate Venue for this Action

In the alternative, if this Court denies AHM's motion to dismiss under Rule 12(b)(3), AHM moves the Court to transfer venue under 28 U.S.C. § 1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought

or to any district or division to which all parties have consented."  Transfer is proper pursuant to 1404(a) because Plaintiff could have brought this claim in the Southern District of Texas and the factors governing transfer this Court must consider strongly weigh in favor of transfer.

### A. Plaintiff's Action could have been brought in the Southern District of Texas.

In deciding whether to transfer a case under § 1404(a), a court must first determine whether the action "might have been brought" in the transferee district.  *See* 28 U.S.C. § 1404(a).  To determine whether Plaintiff could have filed her case in the proposed transferee district, i.e. the Southern District of Texas, the district must have (1) subject-matter jurisdiction over the claim, (2) personal jurisdiction over the defendant, and (3) provide a proper venue.  *See id.*  All three requirements are met in this Action.

First, the Southern District of Texas has diversity subject-matter jurisdiction over this Action.  28 U.S.C. § 1332.  Plaintiff is a citizen of Texas and Defendants are citizens of a foreign nation, California, Michigan, North Carolina, or Ohio.  Compl. ¶ 15, 16-22; Exh. B.  The amount in controversy exceeds $75,000, exclusive of interest and costs.  Compl. ¶ 28.  Second, the Southern District of Texas has specific personal jurisdiction over AHM.  Finally, venue is proper because "a substantial part of the events or omissions giving rise to the claim occurred" in Rockport, Texas.  28 U.S.C. § 1391(b)(2).  Thus, this claim could have been brought in the Southern District of Texas.

### B. Balancing the § 1404 Factors Strongly Weighs in Favor of Transfer.

If the court determines the action could have been brought in the transferee district, the court must next consider several private- and public-interest factors.  "District courts within this Circuit consider four factors when deciding whether to transfer venue: (1) the

weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). A consideration of all these factors strongly favors transfer of this Action.

### (1) Plaintiff did not file this Action in her home state and therefore the Court should not afford her choice substantial weight

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Id.* (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC,* 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). "While Plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate, the amount of weight varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action." *Sullivant Ave. Props., LLC*, 508 F. Supp. 2d at 477. "Naturally, the stronger the contacts between the Plaintiff's chosen venue and the cause of action, the greater weight given to Plaintiff's choice of venue." *Id.*

While substantial weight is traditionally afforded Plaintiff's choice of venue, "[t]his factor's weight in the equation is reduced somewhat by the absence . . . of any substantial nexus between [the] District and the plaintiff's underlying action." *Bd. of Trs., Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 (E.D. Va. 1988).

Here, there is substantial disconnect between the Action and Plaintiff's choice of venue. Plaintiff does not reside in the venue she has chosen and the nexus of Plaintiff's cause of action—her car accident and alleged harm—do not stem from any contacts or conduct in South Carolina. *See id.*; *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) ("Accordingly, the '[p]laintiff's choice of venue is entitled to substantial weight,

unless plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum.' (quoting *Hanover Ins. Co. v. Paint City Contractors, Inc.,* 299 F. Supp. 2d 554, 556 (E.D. Va. 2004)).  Plaintiff has chosen a forum foreign to her residence and to the nexus of her claim.  Thus, despite the preference given to a plaintiff's choice of venue, the weight given Plaintiff's choice of venue is diminished because the cause of action is not connected to South Carolina.

### (2) The Southern District of Texas is more convenient for the non-party witnesses than the District of South Carolina.

"The next factor to be considered is access to, and convenience for, the witnesses." *Starks v. Am. Airlines, Inc.*, 368 F. Supp. 3d 866, 871 (D.S.C. 2019).  "[A] transfer of venue is appropriate when a majority of the witnesses and the scene of the accident are located in another venue, and when a majority of those involved would be better served by changing the venue." *Bennett v. CSX Transp., Inc.*, No. C/A 4:10-1417-RBH, 2010 WL 4646250, at *6 (D.S.C. Sept. 30, 2010).  In *S. Ry. Co. v. Madden*, the Fourth Circuit held that the district court abused its discretion when it denied transfer under § 1404(a) when the only parties who would be inconvenienced by having the trial in South Carolina—where it was brought—were the plaintiff's attorneys, a photographer who took pictures of the accident, and a physician who treated plaintiff.  235 F.2d 198, 200–01 (4th Cir. 1956). The court found that when weighed against all the other witnesses who resided in North Carolina, which was where the injury occurred, the trial court did not soundly exercise its discretion.  *Id.*  It stated, "[W]e cannot imagine a case more clearly calling for the exercise of the power of transfer conferred by the statute." *Id.*

"In many instances, the original forum is convenient for plaintiff's witness, but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum.

Under these circumstances, transfer is inappropriate because the result of transfer would serve only to 'shift the balance of inconvenience.'" *Baylor*, 702 F. Supp. at 1258 (Footnote omitted).  This is not a case where a transfer would shift the balance of convenience from the Plaintiff to defendant.  Here, there are no parties who enjoy the convenience of a home forum because neither the Plaintiff nor the defendants are at home in South Carolina.  Currently, the relevant witnesses include:

- Rebecca Lynne Colbert, Plaintiff, is a resident of Rockport Texas. (Compl. ¶ 5).  She will be a primary witness.
- Emerson Reed Trager, who was identified as the driver of the adverse accident vehicle.  (Police Report Pg. 1).  He resides in Wimberley, Texas.
- Officer Troy Henderson, the Texas law enforcement officer who ticketed Plaintiff as an at-fault party and authored the accident report.  (Compl. ¶ 43; Police Report Pg. 2).
- The EMS personnel and medical personnel who treated Plaintiff in Rockport, Texas and transported her to Spohn Shoreline Pavilion Hospital in Corpus Christi, Texas.  (Compl. ¶ 48; Police Report, Exh. __, p. 3)
- Physicians who treated Plaintiff at the Spohn Shoreline Pavilion Hospital and expected other treating physicians.

Additionally, the "materiality, nature and quality" of the likely testimony of the witnesses is taken into consideration, and it is significant if a proposed transferee court is more convenient to witnesses who will provide essential testimony.  *See Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009).  Plaintiff, Mr. Trager, Officer Henderson, and the Plaintiff's physicians will provide essential testimony and their residency in Texas should be given significant weight.  Moreover, this is not a case where the Court needs to weigh the convenience of one venue for some witnesses against the convenience of the other witnesses because none of the witnesses reside in South Carolina.

Most importantly, the non-party witnesses are outside the District Court of South Carolina's subpoena power but are within the subpoena power of the Southern District of Texas.  In evaluating this issue, district courts have reasoned:

> "The possibility that a case may be tried where certain crucial witnesses could not be compelled to attend is an important consideration.   Requiring a party to try his case with depositions because the place of trial is such as to prevent the party from compelling attendance of material witnesses is unacceptable when the case could be transferred to a district where attendance could be compelled and which would be convenient in other respects for both parties.  Consistent with this principle courts generally transfer cases when important witnesses can not be compelled to testify in the forum, but could be subpoenaed in the transferee court."

*Com. Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F. Supp. 247, 250 (S.D.N.Y. 1974). Many of the non-party witnesses, including an eyewitness to the accident other than Plaintiff, law enforcement, emergency medical personnel, and treating physicians who cared for Plaintiff are outside the subpoena power of the District of South Carolina, but reside within the subpoena power of the Southern District of Texas.  *See* Fed. R. Civ. P. 45(c)(1):

> "A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person(i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.".  *Id.*

Because the forementioned witnesses are outside of this Court's subpoena power, this factor strongly supports transfer of this case to the Southern District of Texas.

**(3) On balance, the Southern District of Texas is more convenient to the parties than the District of South Carolina.**

Trying this case in the Southern District of Texas will certainly decrease Plaintiff's costs in this Action and may reduce the costs to Defendants.  Transfer will decrease the necessary cost of transporting witnesses from Texas to South Carolina.  *See Brown v. Sullivan*, No. 6:14-cv-4376-GRA, 2015 WL 12815281, at *2 (D.S.C. Mar. 3, 2015) (holding that "for the same reasons the court found that a transfer is more convenient to the parties and witnesses, the cost of obtaining attendance of the witnesses would likewise favor a transfer").

**(4) Transfer to the Southern District of Texas serves the interests of justice.**

Transfer serves the interest of justice because this case will involve the application of Texas state substantive law, judicial economy favors transfer to the Southern District of South Carolina, and Texas has a greater interest in this controversy.

First, the Southern District of Texas is better suited to hear this case because of the choice of law provisions dictate the application of Texas law.  "A federal court sitting in diversity jurisdiction must follow the choice of law provisions of the forum state.  In South Carolina, courts must apply, barring some exception, lex loci delicti rule—the law of the state where the injury occurred—when choosing the law to apply.'"  *Butler v. Ford Motor Co.*, 724 F. Supp. 2d 575, 581 (D.S.C. 2010).  The Supreme Court has held that the transfer of venue is advantageous when the choice of law provision indicates a court would apply law from a foreign district.  *See Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S. Ct. 805, 824, 11 L. Ed. 2d 945 (1964).  The Supreme Court reasoned that such cases should be placed in the venue "where the judges possess a more ready familiarity with the local laws."  *Id.*  "'There is an appropriateness * * * in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a

court in some other forum untangle problems in conflict of laws, and in law foreign to itself.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843 (1947))

Here, the accident giving rise to Plaintiff's alleged injuries occurred in Rockport Texas.  Compl. ¶ 1.  Thus, under South Carolina choice of law provisions, this Court will apply Texas substantive product liability law. *Butler*, 724 F. Supp. 2d at 581.  As the Supreme Court has stated, it is appropriate for cases applying those substantive areas of law to be heard in their mother forum, so that districts most familiar with the issues and particularities of local law hear the claim regarding those laws.  *See id.*

Second, the Plaintiff is likely to have a trial date sooner in the Southern District of Texas compared to this Court.  Courts frequently compare the relative congestion of the proposed transferee court to the congestion in the forum court and will transfer the case, when other relevant criteria are met, if doing so will help to relieve overall congestion in the federal court system. *See, e.g.*, *Gulf Oil Corp.*, 330 U.S. at 508.  The Southern District of Texas is less congested than the District Court of South Carolina.  According to statistics provided by the Administrative Office of the United States Courts' "National Judicial Caseload Profile," last year the median time from filing to disposition of a civil case in South Carolina was 10.2 months, compared to the Southern District of Texas at 8.7 months.  National Judicial Caseload Profile, attached as Exhibit D, at p. 24, 36. In the District of South Carolina, the median time from filing to trial last year was 36.0 months compared to 21.1 months in the Southern District of Texas.  *Id.*

Finally, courts in the jurisdiction where the harm occurred have a greater interest in ensuring the case is litigated locally.  *See Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 745 (S.D.W.Va. 2010) (providing a district where the harm occurred "has a strong interest

in having [a] case litigated locally" and the district's "interests include having one of its citizen's rights vindicated, as well as protecting its other citizens" from potential harm). Moreover, the burdens of this litigation more fairly fall to the Southern District of Texas where Plaintiff's alleged harm occurred. *See Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S. Ct. at 843 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). Therefore, the interests of justice and other § 1404 factors weigh in favor of transfer to the Southern District of Texas.

## CONCLUSION

This is an Action where Plaintiff, a resident of the United States District Court for the Southern District of Texas, alleges she experienced harm from a defective product in an automobile accident occurring in the Southern District of Texas. None of the named Defendants are residents of South Carolina. There are no substantial acts or omissions in South Carolina that led to the harm alleged by the Plaintiff. As pled, Texas substantive law will govern this Action.

Plaintiff has not and cannot present any basis why venue is proper in the United States District Court for the District of South Carolina. AHM respectfully requests that this Court dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, transfer this case to the Southern District of Texas pursuant to 28 U.S.C. §1404, and further such further and other relief this Court may deem appropriate.

*(Signature Block on Following Page)*

Respectfully submitted,

**BOWMAN AND BROOKE, LLP**

By:    *s/Patrick J. Cleary*
Patrick J. Cleary (Fed Bar No. 11096)
1441 Main Street, Suite 1200
Columbia, South Carolina 29201
Phone: (803) 726-7420
Facsimile: (803) 726-7421
Email: patrick.cleary@bowmanandbrooke.com

**Attorney for Defendant**
**American Honda Motor Co., Inc.**

August 30, 2021

Columbia, South Carolina